UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>(1) DANIEL P. GIBSON, and )<br>(2) MARK KESNER )<br>)<br>Defendants. )<br>) | Criminal No. 1:15-cr-10323 |

**DEFENDANT DANIEL P. GIBSON'S MOTION TO COMPEL THE GOVERNMENT TO PROVIDE HIM WITH AN IMAGED COPY OF THE GIBSON & BEHMAN SERVER**

Now comes Daniel P. Gibson, a defendant in the above-captioned matter, who hereby moves that this Honorable Court order the Government to provide him, pursuant to Rules 16(a)(1)(B) and 16 (a)(1)(E) of the Federal Rules of Criminal Procedure, Local Rule 116.1(c) of the Local Rules of the United States District Court for the District of Massachusetts, and the Fifth and Sixth Amendments to the United States Constitution, with a copy of the Gibson & Behman, P.C. server that is in the "possession, custody, or control" of the Government for the following reasons:

1. That during the Grand Jury investigation into the above-captioned matter, the Government, and in particular the investigating agency, the Internal Revenue Service, received imaged copies of the Gibson & Behman, P.C. computer server (hereinafter "Server"), *see* Letter from Stephen Heymann, Assistant United States Attorney, to Martin G. Weinberg, Attorney for Daniel P. Gibson (Nov, 24, 2015), at 2, attached hereto as Exhibit 1;

2. That the Government voluntarily entered into an agreement with Mr. Behman's counsel, William Lovett of Collora LLP, whereby the Government's own review of the Server is subject to screening by Mr. Lovett for both privilege and "pertinence", Dkt. 38-1 at 1;

1

3. That the Government has no objection to Mr. Gibson being provided full access to any files on the Server conditioned on the Government having "equal access", Dkt. 38 at 2;

4. That the Government has provided notice that it anticipates offering a computer forensic expert who would testify concerning "records created and [electronically] stored …on Gibson and Behman's…computer servers", Dkt. 38 at 3;

5. That the Government has provided counsel with a copy of the records it was provided pursuant to its agreement with Mr. Lovett, Dkt. 38-1, Dkt. 38 at 2, and Exhibit 1 at 2, however, this production is not co-extensive with its obligations under the above-enumerated rules for the following reasons:

   a. The Government's initial review of the index to the Server, a copy of which was provided to the Court during the February 4, 2016 status conference, which Defendant Gibson asks this Court to mark as Exhibit 3, was limited by the fact that the index in many respects failed to include a full directory of its sub-folders (*i.e.* the folder had a + symbol which indicates a more detailed list of sub-folders that were not revealed by the Directory being reviewed);

   b. The Government failed to identify many relevant folders when it selected materials that it believed were pertinent;

   c. That the selection process, limited as it was, related to a Gibson & Behman, P.C. Grand Jury subpoena which itself required the production of only a subset of documents that are discoverable under F. R. Crim. P. 16(a)(1)(B), and 16(a)(1)(E);

   d. That in particular, the Server contains electronic communications of the defendant that were sent to many third parties for whom the folders were not

selected for review.[1]  These emails are within the "possession, custody, or control" of the Government (in particular the IRS, *see* Dkt. 38-1) and are producible without limitation once the Government "knows – or through due diligence could know – that the [emails] exist(s)", F. R. Crim. P. 16(a)(1)(B). An item is within the "possession, custody, or control" of the Government when the Government is in actual physical possession of the item **or** when the Government has the legal rights to obtain the item. *See Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476 (D. Colo. 2007) ("Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has the legal right to obtain the documents on demand.");

e. That in addition to Mr. Gibson's emails, the Server must be produced so that the defendants can conduct the same forensic examination that the Government is (according to its prior disclosures as to potential expert testimony) intending to conduct, *i.e.* to have equal access to make a full examination of the complete Server;

f. Moreover, electronic folders not selected by the Government, are within the "possession, custody, or control" of the Government, *see supra,* and contain documents "material to preparing the defense", F. R. Crim. P. 16(a)(1)(E), including but not limited to the client files that would reflect which attorney originated and which attorney did work on particular cases, client files that

---

[1] Although a certain amount of Mr. Gibson's emails were produced from his own folder, they were limited to a date range starting on June 15, 2010 and running to June 12, 2012, even though emails from Dawn Garrity were produced dating back to May 5, 2004, and emails produced from Nancy Jones date back to July 2, 2008.  Gibson emailed many others at the Firm whose emails were neither selected by the Government, nor produced in automatic discovery.

    would reflect whether expenditures were appropriate business expenses, emails that would help the defendant prove that there was no intent to conceal his own conduct from others at the firm, emails that would help to prove that Mr. Behman – an applicant for the Whistleblower program and a pivotal adversarial witness – made false statements to the IRS in regards to his cooperation with the Government, emails in the folders of other employees and/or clients of the firm that were authored and sent by such critical Government witnesses as Dawn Garrity and Nancy Jones that would not be recoverable from a selection of only the Garrity or Jones folders, emails of other employees that had access to and potentially made entries to Gibson & Behman, P.C.'s financial records, including but not limited to Alice Whitcomb, and emails that would provide a contemporaneous record of the involvement – or lack thereof – of Mr. Gibson as well as witnesses Behman, Garrity, and Jones in the financial and tax reporting functions of his law firm.

g. Additionally, Mr. Gibson is entitled to the Server because, as the 2/3 shareholder of Gibson & Behman, P.C., the Server "was obtained from or belongs to the defendant," F. R. Crim. P. 16(a)(1)(E);

h. The procedure that was agreed to by the Government is in stark conflict with the imperatives of criminal discovery: first, Mr. Lovett is not an impartial "screener" of documents given that he represents Mr. Behman who has applied for monetary rewards that Mr. Lovett conceivably could share in, that Mr. Lovett has himself participated in the criminal investigation of Mr. Gibson according to

the content of multiple IRS MOI,[2] and that at minimum, Mr. Lovett is not vested with the duties of a prosecutor or judicial officer and should not have the prerogative to unilaterally exclude certain material evidence from the discovery process, *see Kyles v. Whitley*, 514 U.S. 419, 437 ("[P]rosecutor has a duty to learn of any favorable evidence…"); second, absent a privilege log, the Court has no way to know whether the documents being redacted from discovery by Mr. Lovett are in fact privileged and/or material to the defense of this case;

i. Any privilege claim can be secured by a Protective Order, a draft of which is appended hereto as Exhibit 2, that will prevent disclosure of confidential Server information except under seal and only when necessary to litigate a material issue in the above-captioned matter.  The Protective Order further ensures that client files are protected and that the Attorney-Client privilege and the Work-Product protection are not waived by limiting access to client files to Mr. Gibson and his counsel and prohibiting disclosure to the Government without notice to Mr. Behman and his counsel, who will then have an opportunity to seek to intervene to raise potential privilege issues; and

j. Finally, failure to produce this relevant, material, and exculpatory evidence is a violation of defendant's Fifth and Sixth Amendment rights.  *See Brady v.*

---

[2] For instance, during the October 21, 2011 interview of Scott and Marcela Behman, Mr. Lovett represented to Special Agent Ronald Mullen and IRS Contractor David Berge that Mr. Gibson "siphoned up to $6 Million dollars from [Gibson & Behman's] accounts." Behman October 21, 2011 MOI, ¶ 12. During that same meeting, Mr. Lovett also offered to draft a summary of the matter along with the request for inclusion into the Voluntary Disclosure Program for use by the IRS, and stated that he was considering calling AUSA Paul Levinson, who at that time was the head of the Economic Crimes Unit at the United States Attorney's Office. *See Id.* at ¶ 24.  On many other occasions, Mr. Lovett offered to provide, and upon information and belief has provided, the Government with information about the civil litigation against Mr. Gibson and with information about Gibson & Behman's dissolution.  *See Id.* at ¶ 17; *see also* Behman April 10, 2015 MOI, ¶ 17 (Mr. Lovett telling the Government the results of the forensic accounting investigation coordinated by him); *see also Id.* at ¶ 27 ("Lovett will look into whether [information regarding the civil settlement] has non-disclosure covenants"); *see also* Jones April 15, 2015 MOI (Mr. Lovett stating that he has the final accounting performed by the wind-down committee and agreeing to look into whether he could release the information to the Government).

*Maryland*, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); *see also Washington v. Texas*, 388 U.S. 14, 19-23 (1967) (Sixth Amendment right to compulsory process is "in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies."). Prosecutors are under "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437. The prosecutor is held accountable regardless of whether investigators failed to inform the prosecutor of the existence of *Brady* materials. *Id.* at 438; *U. S. ex rel. Marzeno v. Gengler*, 574 F.2d 730, 735 (3d Cir. 1978). Thus, the Government cannot pass of its *Brady* obligations to a third-party, especially to an adversarial third-party such as Mr. Lovett, *see supra*, for that third-party to determine what is relevant and potentially exculpatory. As such, the Government's agreement with Mr. Lovett must give way to defendant's constitutional rights to obtain the evidence contained in the Server and the Server must be produced. *See In re Grand Jury Subpoena*, 138 F.3d 442, 445 (1st Cir. 1998) ("A grand jury's subpoena trumps a Rule 26(c) protective order unless the person seeking to avoid the subpoena can demonstrate the existence of exceptional circumstances that clearly favor subordinating the subpoena to the protective order.").

In short, the Server contains a wide array of documents, electronic communications, and client files to which access is pivotal to defendant Gibson's preparation of a defense to the above-captioned matter. His right to the contents of the Server cannot be restricted by unilateral agreements reached by the Government with counsel for a critical adversarial witness who has a deep bias against the defendant and a monetary incentive to see the defendant convicted. The Server contains exculpatory evidence, discoverable statements of the defendants, and material and reliable evidence that is in the actual possession of the Government. Its production should be ordered to fully comply with both the Constitution and the Federal Rules of Criminal Procedure. For the foregoing reasons, defendant Daniel P. Gibson's Motion to Compel the Government to Provide Him With An Imaged Copy of the Gibson & Behman Server should be granted.

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

The government does not object to Mr. Gibson being provided full access to files contained on the computer server so long as (a) Gibson Hamilton has an opportunity to be heard, (b) an appropriate protective order is entered by the Court and (c) the government is given equal access to the full server if the Court grants this access to Mr. Gibson. The government disagrees, sometimes strongly, with material allegations made as a basis for this request and has not assented to other relief requested herein.

Respectfully Submitted,
Daniel P. Gibson
By his Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

7

Dated: February 25, 2016

## CERTIFICATE OF SERVICE

  I, Martin G. Weinberg, hereby certify that on this date, February 25, 2016, a copy of the foregoing documents has been served via Electronic Court Filing system on all registered participants, including Stephen Heymann, Assistant United States Attorney.

                  **/s/ Martin G. Weinberg**
                  Martin G. Weinberg