UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DANIEL P. GIBSON, and )<br>MARK KESNER )<br>)<br>Defendants. )<br>) | Criminal No. 15-cr-10323-IT<br><br>Leave to File Granted: 3/25/2016 |

**DEFENDANT DANIEL P. GIBSON'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT DANIEL GIBSON'S MOTION TO COMPEL PRODUCTION OF THE LAW FIRM OF GIBSON AND BEHMAN'S ENTIRE COMPUTER SERVER, AND TO SCOTT BEHMAN AND BEHMAN HAMBLETON LLP'S OPPOSITION TO DEFENDANT DANIEL P. GIBSON'S MOTION TO COMPEL THE GOVERNMENT TO PROVIDE HIM WITH AN IMAGED COPY OF THE <u>GIBSON & BEHMAN SERVER</u>**

Now comes the Defendant, Daniel P. Gibson, who hereby replies to the Government's Response to Defendant Daniel Gibson's Motion to Compel Production of the Law Firm of Gibson and Behman's Entire Computer Server, Dkt. 46, and to Scott Behman and Behman Hambleton LLP's Opposition to Defendant Daniel P. Gibson's Motion to Compel the Government to Provide Him with an Imaged Copy of the Gibson & Behman Server, Dkt. 48, as follows:

As to the Behman Opposition, Dkt. 48:

1. Procedurally, the defendant objects to a private party intervening in what is a discovery dispute between the Government and a citizen charged with a federal criminal offense. This is not a triangular context where witnesses and informants, particularly Mr. Behman, who, through counsel, applied for the monetary benefits of the IRS's Whistleblower Program, can make a filing that goes beyond the assertion of a privilege and instead make arguments far more wide ranging than the only adversary that Mr. Gibson is supposed to be defending against – the United

1

States of America – which is represented by a highly experienced and competent federal prosecutor – has made.

2. The Behman Opposition never addresses the contention that the Server is not Behman's property alone and certainly not the property of Behman Hambleton LLP (hereinafter "BH"). Mr. Gibson never relinquished his interest in the property of Gibson & Behman. Mr. Behman never had Mr. Gibson's consent to use the Gibson & Behman Server for the benefit of his new firm BH or to "migrate" the G&B Email Server onto a newly purchased BH Server in 2012, *i.e.* after Gibson & Behman had ceased to exist except as an entity being wound down through a Wind Down Committee. *See* Dkt. 48 at 2.[1] That the Gibson & Behman Server has confidential BH materials on it is the fault of Mr. Behman alone, who apparently exposed the confidential materials of the Gibson & Behman clients to those working for a different law firm, BH.

3. Substantively, the Behman Opposition's unspoken assumption is that the rights of Mr. Gibson and the obligations of the Government should both be subordinated to Mr. Behman's determinations of what is and is not *pertinent* as well as privileged – determinations that were previously made unilaterally by Mr. Behman, that were not reviewed by the Government, that were not accompanied by a privilege log as required by both criminal and civil case law, *see e.g. In re Grand Jury Proceedings*, 274 F3d 563 (1st Cir.2001), and that are not in their current context reviewable by the Court. Further, Mr. Behman makes representations that lack plausibility, e.g. that Mr. Gibson has already received a copy of all the emails on the Gibson Behman Server. The Gibson emails received in civil litigation are dated beginning May-June 2010, whereas emails for other Gibson & Behman employees begin years earlier (e.g. Dawn

---

[1] Mr. Gibson did not retain his G&B laptop. *See* Dkt. 48 at 2. Mr. Behman was fully aware of the practice of writing off personal loans, including his own, before March of 2011. *See* Dkt. 48 at 2. Neither allegation is relevant to the resolution of the outstanding motion.

Garrity's email folder dates back to 2004). What was not produced in civil litigation are emails sent by Mr. Gibson (or more accurately, by others typing at his direction) to numerous other Gibson & Behman employees other than Dawn Garrity and Nancy Jones from the 2004-2010 period, i.e. the period charged in the Indictment. What was not produced in civil discovery is the full range of Mr. Behman's emails given that Mr. Behman's counsel elected, again unilaterally, to significantly limit the production of Mr. Behman's emails to "non-privileged emails related in any way to G&Bs finances," Dkt. 48 at 3. Only 694 of Mr. Behman's emails were produced as part of civil discovery and only 155 of Mr. Behman's emails were produced as part of criminal discovery, a miniscule amount given that the Server likely contains tens of thousands of Mr. Behman's emails from the 2004-2011 period. This narrow production further underscores the unfairness of Mr. Behman's counsel, while zealously advocating on behalf of his client, being solely in charge of determining the pertinence and privilege of Mr. Behman's emails. The rights of Mr. Gibson in a criminal case cannot be contingent on Mr. Behman's counsel's selection during civil litigation as to what emails are privileged (at least not without a privilege log) and what emails are pertinent to G&Bs finances rather than the many other issues that will be raised in this case, Dkt. 48 at 7. Emails of Mr. Gibson from 2004-May/June of 2010 constitute written "statements" of a defendant to which he is unconditionally entitled.

4.      Likewise, the Server contains a wide breadth of relevant documents and electronic communications not in the possession of Mr. Gibson's counsel. Mr. Behman's counsel restates the charges in the Indictment, Dkt. 48 at 8, but is not familiar with the breadth of relevant evidence that may or may not be offered by the Government in its prosecution of Mr. Gibson nor what may be used during his cross-examination. What was not produced in civil discovery are emails being received by other Gibson and Behman attorneys such as Chris Cifra and Alice

Whitcomb (each were interviewed by the IRS during the criminal investigation), by Nancy Katz (a prior partner in both Gibson and Behman and then Behman Hamelton who is familiar with Behman's financial awareness and tax practices), and others.  Access to client files is not only a right of Mr. Gibson's, subject to his abiding by confidentiality concerns, but also a necessity. Absent the prosecution agreeing to the exclusion of evidence and the limitation of future cross-examination should Gibson elect to testify, any argument that Gibson's financial conduct within the firm, e.g. his receiving more than 2/3 of the proceeds, his origination of cases, his work on cases, his expenditures, his cash advances, the reasons for specific expenditures, and his reliance on firm credit cards to promote the firm at social and professional functions, all require access to client files.  How else does Mr. Gibson attribute expenditures to proper professional purposes rather than arguably improper personal purposes?  It is also incumbent on Mr. Gibson to prove that unlike his partner, Mr. Behman, he was working tirelessly, both litigating client cases and promoting the firm as a whole, originating far more than 2/3 of the cases, responsible for more than 2/3 of the proceeds of the firm thus justifying in the give and take of a small two man firm his receipt of over 2/3 of the firm's proceeds.  Given Mr. Behman's prior biases against Mr. Gibson (their civil litigation reflects profound past financial and personal bias on the part of Mr. Behman who sued Mr. Gibson and then brought an Arbitration Demand against him), and his current monetary motivation seeking financial rewards through the IRS Whistleblower Program that would be furthered only by Mr. Gibson's conviction, it is fanciful to entrust the criminal discovery process to Mr. Behman's counsel.

     5.     The rights of Mr. Gibson are not predicated on Mr. Behman's counsel's selection of what documents are, in his opinion, "responsive" to a Grand Jury subpoena, Dkt. 48-4 at 2. Even were the Court to subject discovery to the protocol advocated by Mr. Lovett, Dkt. 48-4 at

2, "responsiveness" would not be the standard – Mr. Behman's only principled participation should be limited to raising issues of privilege. Like any other third party who claims a privilege to discoverable materials, Mr. Behman's intervention should be limited to claiming a privilege on a document by document basis, filing a privilege log to support the third party claim, and being heard solely on such privilege claims that are properly raised. As to any overlap with documents received in civil litigation, defendant Gibson contends that given the very distinct civil obligations of Mr. Behman's counsel, that Gibson has a right to Rule 16 discovery being managed by the Government not Behman and his counsel.

As to the Government's Opposition, Dkt. 46:

1. Invoking Rule 17 would create a fiction – that the discoverable material is not actually in the possession of the Government. The Government cannot receive discovery during the Grand Jury phase and then voluntarily limit access with private agreements that deeply disadvantage the target of the Grand Jury who is later indicted and entitled to the full range of Rule 16 discovery. The Government could have compelled the production of the Gibson Behman Server (or all portions of the now Behman Hamelton Server that originated before the creation of Behman Hamelton in mid-2011) subject to a taint review or subject to an agreement that access to files would be disclosed to Behman's counsel who could then attempt to protect arguably confidential documents through the production of a particularized privilege log. But, the Government cannot take possession of a Server, allow Mr. Behman's counsel to unilaterally determine issues of "pertinence" as well as "privilege", Dkt. 38-1 at 1, and then deny Mr. Gibson access to material portions of the Server. Again, if there are invocations of privilege, they must be raised with a privilege log, subject to judicial review, with any production subject to a Protective Order.

2.    Tying the receipt of the Server to foreseeable authenticity claims by Gibson underscores the need for equal access: if the Government acquired the Server to further its prosecutorial interest, then its possession subjects the Server to Rule 16 obligations. If the Government intends to have its forensic experts conduct a review to authenticate documents, then a defense expert is constitutionally entitled to equal access. Rule 17 has nothing to do with documents in the possession of the Government.

3.    Just as the Government contends that it is the defendant's duty to find exculpatory evidence from produced discovery, *see e.g. United States v. Skilling*, 554 F.3d 529, 576 (5th Cir.2009) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence."), the Government cannot claim that a lack of knowledge of the exculpatory information in its physical possession provides a basis for not producing the possessed information to the defendant pursuant to a procedure that would give Mr. Behman the right to raise privilege (not pertinence) objections.

4.    The rights of Mr. Gibson are not limited to the breadth of a Grand Jury subpoena, which guided Mr. Behman's production determinations, Dkt. 46 at 3. When the source of the subpoenaed evidence is provided to the Government, the standard for production to the defendant is set by Fed. R. Crim. P. 16, not Rule 17, which, in contrast to Rule 16, sets arduous criteria for pretrial production. *United States v. Nixon*, 418 U.S. 683 (1974).

5.    The server is the DNA of the Gibson and Behman law firm, which is at center of the allegations against Mr. Gibson. There is a real risk if the Server is not provided pre-trial that there is going to be litigation that permeates the trial that will risk a fair and continual presentation of the prosecution and defense. Converting a Rule 16 issue into a Rule 17 issue, as proposed by the Government, risks returning this court to the battleground of extensive prior

civil litigation regarding the proprietary of Mr. Behman's takeover of the Gibson and Behman law firm and regarding the profound partiality of both Mr. Behman and his counsel, which prevents them from in any way being able to fairly determine pertinence/relevance, or from even making a privilege decision absent production of a privilege log for judicial review. It is challenge enough for a citizen to fight the Government's allegations, without having the citizen's former law partner and his counsel limiting access to material, and sometimes exculpatory, evidence. Subject to the proposed Protective Order, this court is urged to subject the Server to Rule 16 discovery and provide Mr. Gibson with the evidence he needs for his defense.

>Respectfully Submitted,
>
>Daniel P. Gibson
>By his Attorney,
>
>**/s/ Martin G. Weinberg**
>Martin G. Weinberg
>Mass. Bar No. 519480
>20 Park Plaza, Suite 1000
>Boston, MA 02116
>(617) 227-3700
>owlmgw@att.net

Dated: March 25, 2016

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, March 25, 2016, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants, including Stephen P. Heymann, Assistant United States Attorney, and William J. Lovett.

>**/s/ Martin G. Weinberg**
>Martin G. Weinberg