**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                           )
UNITED STATES OF AMERICA                   )
                                           )
v.                                         )      15-cr-10323-IT
                                           )
DANIEL GIBSON and MARK KESNER,             )
                                           )
        Defendants.                        )
_____)


**GOVERNMENT'S RESPONSE TO SCOTT BEHMAN'S AND BEHMAN
HAMBELTON'S OBJECTIONS TO MAGISTRATE JUDGE CABELL'S ORDER
COMPELLING PRODUCTION AND ACCOMPANYING PROTECTIVE ORDER**

**Introduction**

During the course of a criminal investigation, the government subpoenaed the Behman

Hambelton law firm ("Behman Hambelton", or "the firm") for records relating to financial

transactions of attorney Daniel Gibson and a predecessor law firm, Gibson & Behman, P.C.

(Docket #46, Exhibit A) In an effort to facilitate the firm's response to the subpoena, the

government and the firm entered into a written agreement (Docket # 46, Exhibit B) pursuant to

which the government identified file directories on the firm's computer server that it believed

might contain records relevant to the investigation.  The firm, in turn, agreed to review those

files for responsiveness and privilege, and to provide the results of that review to the

government.  (*Id.*)  The government has produced copies of all records it obtained in this process

to the defendants. (Docket # 24, ¶ 3; Docket #25, ¶ 3)

The agreement also provided that the government would retain, but not review, a copy

("image") of the firm's server to address any subsequent challenge to the records' authenticity.

The defendants now seek the production of a vast portion of that image, which they contend

1

contains additional, unspecified records that are both relevant and exculpatory.  (Docket #42 and #43)

As the government has previously argued, the defendants' request seeks materials to which the government itself does not have access.  (*See, e.g.,* Docket # 46)  For this reason, the proper mechanism for the defendants to obtain the records they seek is to subpoena Behman Hambelton pursuant to Fed. R. Crim. P. 17(c).

Requiring the government to review the server—in contravention of its agreement— would create a massive, effectively impossible burden.  The government has no way of knowing what specific documents among the approximately 75 gigabytes of compressed materials the defendants believe would aid in their defense.  Only the defendants know the answer to this question.  Indeed, the government has already produced the materials it believes are relevant.  As Judge Cabell has noted, "it would be impractical to ask the government to" search the law firm's entire server and determine what is pertinent, material, exculpatory or otherwise responsive. (Transcript of April 21, 2016 Motion Hearing ("Transcript") at pp. 7-8)

At the same time, Judge Cabell's solution—ordering the government to produce the server to the defendants subject to an accompanying protective order—entitles Behman Hambelton to review for privilege any specific document the defendants seek before it is placed in the public record or used in a proceeding (Docket #75, ¶ ¶ 6-7), and further protects Behman Hambelton from any claim of waiver pursuant to Fed. R. Evid. 502(d). (Docket # 75, ¶ 8)  Those orders are neither clearly erroneous nor contrary to law insofar as they ensure the defendants' ability to obtain additional documents they contend are relevant while safeguarding any applicable attorney client privilege.  *See* Rules for the United States Magistrate Judges in the United States District Court for the District of Massachusetts, Rule 2(b).

## The Charges in This Case

Until early 2011, defendant Daniel Gibson was a partner in the law firm, Gibson and Behman.  Gibson owned two-thirds of the stock; Scott Behman, who appeals here, owned one-third.  The Indictment charges that Gibson filed false income tax returns with the aid and complicity of his accountant, defendant Mark Kesner.  (Docket # 1)  In brief, the evidence at trial will show that Gibson and Kesner knowingly and intentionally grossly underreported Gibson and Behman's net income and, accordingly, the income on which Gibson was obligated to pay taxes. *Id.*

## The Government's Restricted Access to a Copy
## of Gibson and Behman's Computer Server

Gibson and Behman broke up when, among other things, Gibson was suspended indefinitely from the Bar for financial malfeasance with client funds. *Cf.  In re Daniel Peter Gibson,* No. BD-2011-066 (S.J.C. August 19, 2011). Behman started a new firm, Behman Hambelton LLP, with a number of Gibson and Behman's former clients.  A computer server first used by Gibson and Behman continued to be used by Behman Hambelton, which added files to it.

On June 12, 2015, the government subpoenaed records relating to Gibson and Behman and Daniel Gibson from Behman Hambelton.  (Docket #46, Exhibit A) To facilitate compliance with the subpoena, the law firm gave limited consent to the government to look at a copy of the computer server for file directories which might contain material records.   The government, in turn, agreed it would look at the contents of the files only once the law firm had personally reviewed them to ensure they complied with the expansive subpoena and were not privileged. (Docket #46, Exhibit B).   The law firm also consented to the government retaining an image of

the computer server to be able to establish the authenticity of produced records, if their authenticity was ever challenged. (*See Id.*)

The government reviewed the file structure and identified certain directories which it believed potentially contained relevant files.  Behman Hambelton reviewed those directories for privilege and compliance with the subpoena, and produced non-privileged files to the government on a separate disc.  The government provided a complete copy of the disc it received from Behman Hambelton to the defendants six months ago.  (Docket # 24, ¶ 3; Docket #25, ¶ 3) It thus ensured that the defendants had copies of all records which the government identified as even potentially relevant it obtained from the Behman Hambelton server.

### Defendant's Motion to Compel

Gibson, later joined by Kesner, moved to compel production of the Behman Hambelton server in its entirety.  (Docket #42 and #43)  In material part, the defendants argued that the government had possession, custody or control of all records on the server, even those which it did not have consent to access. The government strongly opposed.  (*See, e.g.,* Docket 46).

### Judge Cabell Erred in Finding the Government Had Possession, Custody or Control for Discovery Purposes of Records Contained on Behman Hambelton's Computer Server Which the Government Did Not Have a Lawful Right to Access

As a matter of law, the government's possession, custody and control of records contained on the server is defined by the scope of the consent which was given by Behman Hambelton. The government cannot provide the defendants with a copy of the law firm's computer server because it cannot transfer an unrestricted right to possess and search the law firm's computer server which the government, itself, does not have. The government can only do what it did in November: provide the defendants copies of every record from the directories

identified as potentially relevant which it received from Behman Hambelton after the firm's

subpoena compliance and privilege review.[1]

### Broader Law Firm Server Access Than the Government Can Provide the Defendants

This in no way means that the defendants cannot get access to materials which they can

demonstrate to the Court are necessary for the preparation of their defenses.  The defendants are

in exactly the same position as if Behman Hambelton had printed paper copies of all of the

sizeable number of records stored on Gibson and Behman's computer server, reviewed each one

manually for relevance and privilege and produced relevant, unprivileged paper copies to the

government in response to the grand jury's subpoena.  To the extent the defendants seek

additional records for preparation of their defenses, they can, and should, simply apply to the

Court for subpoenas pursuant to Fed. R. Crim. P. 17(c).

### Joint Submission of a Proposed Protective Order

Judge Cabell stated during the oral argument on April 21st that he disagreed with the

government and believed that all records contained on Behman Hambelton's computer server

were in the government's possession for the purposes of discovery.  (*See* Transcript at p. 7)  He

encouraged the parties and Behman Hambelton to work towards an agreed protective order

which would govern production of the full server and all of its contents.  (Transcript at p.9)

Pursuant to that request, the defendants and the government subsequently submitted a joint

proposal.[2]  (Docket # 67)

---

[1] Contrary to Behman Hambelton's claim at page 7 of its Opposition, the government has never "abandoned" this position.

[2] Behman Hambelton's Objection also is thus misleading at pp. 7 and 11 to the extent that it contends the government sought to sidestep its agreement with the firm by working with the defendants on a proposed protective order.  Indeed, the government has advocated Behman Hambelton's need to be heard in this matter from the outset. *See, e.g.,* Joint Memorandum for

### Should the Court Similarly Find the Government Has Possession, Custody or Control of the Entire Contents of Behman Hambelton's Computer, <u>The Court Should Not Overturn Judge Cabell's Orders</u>

<u>Disclosure Pursuant to the Court's Orders Do Not</u>
<u>Constitute a Waiver of the Attorney Client Privilege</u>

The Protective Order (Docket #75) entered by the Court provides multi-leveled

protection to Behman Hambelton's interests.  At its foundation is the expansive protection

available to federal courts under F.R.E. 502(d). Paragraph 8 of Judge Cabell's Protective Order

provides:

> Pursuant to Federal Rule of Evidence 502(d), it is hereby ordered
> that disclosure of materials taken from the Server Copies to the
> parties and others authorized by the terms hereof shall not be
> deemed a waiver of any privilege or protection otherwise
> applicable to such materials.

Under F.R.E. 502(d)

> A federal Court may order that [the attorney-client privilege or
> work-product protection] is not waived by disclosure connected
> with litigation pending before the court—in which event the

---

First Initial Status Conference (Docket # 27, p.2) ( "the Government believes the Court must
give the successor law firm an opportunity to be heard on protections it believes need to be in
place with respect to the law firm's files").  Further, the government wrote the firm's counsel
after Judge Cabell announced his intended rulings from the bench, undertaking to follow the
earlier protocol to the extent practicable, notwithstanding the Court's orders.

> [Judge Cabell's] order is now controlling.  To the extent
> practicable, we will continue to provide you with any new files we
> may seek from the server image to review before we, ourselves,
> look at them, subject to your commitment to review them on behalf
> of your client expeditiously and within a time period consistent
> with the government's obligations in the criminal case.  As we
> approach trial and during the course of trial there could be little or
> no time for you to review files in advance rather than in
> accordance with the protocol Judge Cabell has ordered, but there
> will obviously be more time while we remain in the pretrial phase.

disclosure is also not a waiver in any other federal or state proceeding.[3]

Indeed, as reflected in a Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence contained in an Addendum to Advisory Committee Notes, F.R.E. 502(d) was enacted to address exactly the type of situation presented here:

> [Subdivision (d) – Court Orders] is designed to enable a court to enter an order, whether on motion of one or more parties or on its own motion, that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, while still preserving each party's right to assent the privilege to preclude use in litigation of information disclosed in such discovery.

<u>The Government Already Has Conducted a Reasonable Search</u>
<u>of the Law Firm's Server for Directories Containing Relevant Records</u>

The government already has tried to identify file directories on the Behman Hambelton server with records relevant to this case.  These records were reviewed for responsiveness and privilege by the firm and the defendants were provided with copies of all of the relevant, non-privileged records in the government's possession.  If the defendants contend there are any additional records on the server relevant to the preparation or presentation of the defense, the defendants – not the government – are in the best position to identify them.  Similarly, Behman Hambelton, not the government, is in the best position to determine which, if any, records contained on the server copy are privileged and, indeed, the firm explicitly retained this review for itself in the earlier production agreement with the government.

---

[3] F.R.E. 502 was enacted by Congress.  Honoring an order under Rule 502 is not a matter of comity.  *Tucker v Ohtsu Tire and Rubber Co. Ltd*, 191 F.R.D. 495 (D. Md. 2000), cited to the contrary at p.13, fn. 8 of the Opposition, was decided before the enactment of the Rule 502 in 2008 and, accordingly, has no bearing on the present case.

**Conclusion**

The Court should reject the Magistrate Judge's finding that the government has "possession, custody or control" for discovery purposes of records stored on Behman Hambelton's computer server which the government does not have consent to access.  If the Court adopts this finding, it should also adopt the Magistrate Judge's integrated and balanced Order Compelling Production and Associated Protective Order.


Respectfully Submitted,

CARMEN M. ORTIZ
United States Attorney


By:    *Stephen P. Heymann*
       STEPHEN P. HEYMANN
       Assistant U.S. Attorney


**CERTIFICATE OF SERVICE**

I hereby certify that on this day, June 22, 2016, I electronically filed the above Opposition using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*Stephen P. Heymann*
STEPHEN P. HEYMANN
Assistant U.S. Attorney