UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>(1) DANIEL P. GIBSON, and )<br>(2) MARK KESNER )<br>)<br>Defendants. )<br>) | Criminal No. 1:15-cr-10323 |

**JOINT OPPOSITION TO SCOTT BEHMAN AND BEHMAN HAMBELTON LLP'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER REQUIRING THE GOVERNMENT TO PRODUCE ATTORNEY-CLIENT PRIVILEGED MATERIAL AND CONFIDENTIAL CLIENT INFORMATION TO DEFENDANTS MARK KESNER AND DANIEL GIBSON**

Defendants Daniel P. Gibson and Mark Kesner, by and through undersigned counsel, hereby jointly oppose movants[1] Scott Behman and Behman Hambelton LLP's (hereinafter "BH") Objections to the Magistrate Judge's Order Requiring the Government to Produce Attorney-client Privileged Material and Confidential Client Information to Defendants Mark Kesner and Daniel Gibson.

## I. BACKGROUND AND FACTS

For almost four months, defendants Gibson and Kesner have been engaged in on-going litigation with intervenors Behman and BH to acquire complete access to relevant and material information located on the Gibson & Behman, P.C. server (hereinafter "Server") that is within the possession, custody, and control of the Government and that defendants have a right of access to under F. R. Crim. P. 16, Local Rule 116, and *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *See* Dkt. 42, 46, 48, 51, 62, 63, 67, 68, 74.

---

[1] Defendants have jointly filed an Opposition to Scott Behman and BH's Motion to Intervene. *See* Dkt. 87.

1

After considering the arguments set forth in numerous pleadings and put forth during three oral arguments, Magistrate Judge Cabell, concluded that the Server is in the Government's "custody, possession, or control for discovery purposes." Dkt. 74 at 3.  That despite Behman and BH's attempts to subject the Government's access to the Server to its determination of relevance and privilege, the Government was permitted, by the agreement, "to access the entire server and to retain a copy of the server going forward." *Id.*  And, that "[n]o party has provided any persuasive authority holding that a protocol agreement such as the one used here can render material which is indisputably physically held and controlled by the government as somehow outside of its custody, possession or control for purposes of its discovery obligations." *Id.* Finding against Behman and BH's arguments, Magistrate Judge Cabell granted the defendants' Joint Motion for Entry of Protective Order, Dkt. 67, but ensured that any privileged material is adequately protected by imposing a protective order that requires the defendants, prior to putting the material into the public record, to provide the materials for review either to the Court *in camera* or to Behman and BH's counsel, who could then intervene and object on privilege grounds. *Id.* at 3-4; see also Dkt. 75.  Importantly, Magistrate Judge Cabell's Order does not allow defendants to unilaterally put any Server materials into the public record.

During the Grand Jury investigation into the above-captioned matter, the Government, and in particular the investigating agency, the Internal Revenue Service, were voluntarily given access to the entire Server, now at issue, by Behman and BH. *See* Dkt 42-1 at 2.  Behman and BH responded to the Government's targeted Grand Jury subpoena by knowingly and willingly producing the entire Server, which contained the electronic records of Gibson & Behman P.C. (hereinafter "G&B"), a law firm that was 2/3 owned by defendant Gibson and 1/3 owned by

2

intervenor Behman.[2] The Grand Jury subpoena, Dkt. 79-1, did not compel Behman and BH to provide the Government with access to their Server (which the Government in part imaged and which resulted in their having "possession, custody, **or** control" of the evidence that the defendants are seeking); Behman and BH could have, like most subpoenad companies, downloaded specific files that respond to the compulsion of a subpoena, and, if these files included privileged materials, could have declined to produce those materials while filing a privilege log as required by First Circuit law, *see e.g. In re Grand Jury Proceedings*, 274 F3d 563 (1st Cir.2001). Instead, Behman – after disclosing client confidences during civil litigation and after transporting, wholesale, the entire electronic database of one lawfirm into his new firm BH – provided the Government with the right to image the entire Server containing the files of two law firms, G&B and BH, access well beyond the Grand Jury subpoena that targeted a narrow subset of files, while attempting to limit the Government's review of the materials that were now in its possession, custody or control by an agreement, whereby Behman and BH, through their counsel Mr. Lovett, would screen for both privilege and "pertinence", Dkt. 79-2 at 1. This agreement, as discussed in more detail below, did not excuse their wholesale disclosure of privileged material to the Government, nor did it constitute a legally enforceable bar to a court order such as the one issued in this case, Dkt. 75, that the Government – not Behman and BH – would be in charge of providing discovery to the defendants. Magistrate Judge Cabell properly determined that the agreement between Behman, BH, and the Government which, if followed, would impermissibly vest Mr. Lovett with determining the scope of the Government's discovery production could not usurp the traditional discovery obligations imposed on the Government as

---

[2] G&B was dissolved on June 30, 2011. Behman subsequently formed a new firm, BH, and migrated, without Gibson or G&B clients' permission, the Server, including privileged communications and confidential client information, into the BH Server.

3

to evidence within their possession, custody, or control particularly in a case where, as here, Behman, BH, and their counsel Mr. Lovett are deeply biased having prosecuted a related civil action against the defendants, having provided the Government with meaningful support in their investigation, and who now stand to financially benefit from defendants' conviction.[3]

Notably, the record reflects that the Behman/BH-Government agreement, Dkt. 79-2, applies to *only* the pre-indictment, grand jury state of the investigation and that Behman and BH fully understood that their decision to turn over the entire Server would forseeably result in the Government having to produce the Server to defendants on the basis of the Government's independent discovery obligations. The protocol agreed to by Mr. Lovett, Dkt. 79-2, tied the Government's creation of and maintaining of a complete image of the server with a potential future criminal case with very distinct discovery obligations under the criminal rules, stating that the Government would "access it only if it is necessary to do so in a subsequent criminal proceeding." Dkt 48-3. The protocol was further recognized as failing "to address the possibility that, in the event [of an] indictment, defense counsel may request copies of the mirror images." Dkt 48-4. Behman "requested" that post-indictment the Government follow the protocol of making Behman's counsel the gatekeeper to the Government's Rule 16 obligations, but this was a "request" that the Government properly did not adopt. *Id.* ("In the event that such a [post-indictment discovery] request is made, I would *request* that any production of information from the Gibson & Behman PC servers to defense counsel be subject to the same protocol described above to avoid disclosure of any privileged documents or communications.")(emphasis added). In short, Behman and BH's agreement, by their own admission, applies to only the pre-

---

[3] Behman, as disclosed by the Government, has submitted an application for an award as an IRS whistleblower regarding the alleged unpaid taxes. *See* Dkt. 46-3 at 2. Behman's counsel's overzealous lack of partiality is readily apparent in the unnecessary rhetoric he employs in even his current motions, *see* Dkt. 79 at 1-3.

indictment, grand jury stage of the investigation, not the current "subsequent criminal proceeding". Thus, the agreement, at this stage of the proceeding, cannot be interpreted to preclude the Government from running searches on the Server material and providing the defendants with equal access to the information subject to the meticulous procedures set forth by Magistrate Judge Cabell in the Protective Order that will, as a practical matter, allow this case to proceed in an orderly and timely fashion.[4] .

## II. ARGUMENT

On appeal of a non-dispositive matter, the District Court is required to "consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000) (internal quotations and citations omitted). "Findings are clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002). "The party seeking to overturn a magistrate judge's decision carries a heavy burden." *Id.*

1. **BEHMAN AND BH HAVE VOLUNTARILY WAIVED PRIVILEGE AND OTHER PROTECTIONS IN REGARDS TO THE SERVER.**

The First Circuit has long held that "the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). Furthermore, the First Circuit has held that the "privilege evaporates the moment that

---

[4] Avoiding a potentially multi-year review by an unnecessary taint team, *see infra* Section 5. *See e.g. United States v. Abbell*, 963 F. Supp. 1178 (S.D. Fla. 1997).

confidentiality ceases to exist." *Id.* at 23.

Behman has voluntarily waived privilege and other protections in regards to the files defendants are seeking access to on at least three different occasions.[5] It was presumably this waiver that caused Magistrate Judge Cabell to Order BH to make a "statement indicating whether and to what extent BH has previously in any other setting voluntarily disclosed any materials it might seek to shield here from disclosure or use" prior to any requests for further relief. Dkt. 74 at 4-5.

First, Behman took materials on the Server belonging not to him or to BH, but to G&B, and unilaterally, without permission or notice, merged those materials into the BH server. In doing so, Behman provided to BH employees, who have no relationship to G&B, access to materials that Behman now claim are too sensitive for the defendants to see. It is no excuse that certain G&B clients became BH clients: none of the many past and current G&B clients who did not become BH clients ever consented (or were even informed) by Behman or BH that their legal files would arbitrarily and secretly be given to a new law firm.[6] Second, Behman voluntarily provided to defendants Gibson and Kesner and Kesner's accounting firm during civil litigation

---

[5] Behman and BH, in their pleading cite to an opinion from the Massachusetts Bar Association Committee on Professional Ethics, *see* Dkt 79 at 13-14 and Dkt 79-3, advising Behman and BH that producing the Server would jeopardize numerous confidential client records and that they should assert all non-frivolous claims that the documents are protected. The opinion, however, is not entirely based on the facts of this case. Nowhere does Behman and BH mention that they have already disclosed confidential materials on numerous occasions. Further, the opinion results from a false hypothesis: that Gibson wants to disclose (all) the materials in question for his own purposes. Dkt. 79-3 at 4 ("Attorney A is seeking access to confidential information of his former clients at AB Law Firm, which Attorney A intends to disclose and use in the course of defending himself in the non-client related criminal proceeding."). The opinion also does not mention that any future disclosure would be subject to the procedures in the Protective Order, Dkt. 75.

[6] Gibson, the principal owner of G&B, did not consent to this procedure, nor did a Wind Down Committee that governed G&B starting in 2011.

6

various emails from former G&B employees, while selectively withholding his own.[7] These emails, *e.g.* between Gibson and others at the G&B law firm, contained communications regarding G&B's client and discussed client confidences and constituted opinion and fact work product. They were provided in civil litigation solely to further Behman's monetary lawsuits against Gibson and Kesner's accounting firm. They were not accompanied by any privilege log or any of the procedures that Behman and BH now, years later, when Behman's monetary interests are not being prioritized, seek to superimpose on the Government's *Brady* and Rule 16 obligations. Finally, and most importantly, Behman provided the Government with a copy of the entire Server. Rather than tailor the production to the narrow Grand Jury Subpoena request, Dkt. 79-1, or to create a privilege log and produce only relevant non-privileged material, Behman produced the contents of the entire Server with full knowledge that the Government may have Rule 16, Local Rule 116, and *Brady* obligations if defendants were indictment, *see e.g.* Dkt. 48-4.

      Thus, Behman and BH, after waiving privilege and other protections numerous times, cannot now claim that the materials are protected from production, especially given the Government's statutory and constitutional obligations to provide defendants with access to the materials. *See In re Columbia/HCA HealthCare Corporation Billing Practices Litigation*, 293 F.3d 289 (6th Cir.2002) (party cannot selectively waive attorney-client privilege by releasing otherwise privileged documents to government agencies during investigation, but continue to

---

[7] While it is true that Behman and BH produced copies of email boxes belonging to Gibson, and two G&B employees, Dawn Garrity and Nancy Jones, through the civil case, the production was far from complete. The Gibson emails dated back only to May-June of 2010, whereas emails for other G&B employees begin years earlier (*e.g.* Dawn Garrity's email folder dates back to 2004). Additionally, Behman withheld a large portion his own emails, producing only 694 of his emails as part of civil discovery and only 155 of his emails as part of criminal discovery. This is just one example of Behman's underlying biases against the defendants and just one reason why his counsel should not be allowed to determine privilege and "pertinence" of the Server material.

assert privilege as to other parties).

### 2. THE MAGISTRATE JUDGE'S ORDER IS NOT A VIOLATION OF ANY SUPREME COURT PRECEDENT AND MORE THAN ADEQUATELY PROTECTS ANY ATTORNEY-CLIENT PRIVILEGED MATERIALS.

Magistrate Judge Cabell's Order is specifically designed to avoid a disclosure of any attorney-client privilege and confidences beyond that necessary to a fair resolution of the above-captioned matter. The Order provides for two levels of protection to ensure that privileged information is not disclosed and hence no privilege or confidences are waived. The Order first requires defendants to give notice to Behman and BH's counsel prior to use of any materials that "might arguably be privileged." Dkt 74 at 4. This allows Behman and BH, through their counsel, to seek a protective order on specific grounds to avoid disclosure of any confidential and privileged information. The second and broader line of defense requires the defendants to produce "any other documents it determines are not privileged, but still seeks to use" for *in camera* review. These protective mechanisms in sum ensure that no documents coming from the Server are released into the public sphere without a review by the Court or Behman and BH's counsel, thus ensuring there is no waiver of attorney-client privilege or other protections.

Furthermore, even in a different case where the movant law firm had not waived privilege and other protections on numerous occasions, this Court and Magistrate Judge Cabell are well within their rights to weigh defendants' Sixth Amendment rights against protections afforded by the Attorney-client privilege and to order production of the Server.[8] In *United States v. W.R. Grace*, the Court examined numerous Supreme Court precedents and determined

---

[8] Rather than prematurely deciding the constitutional issue, Magistrate Judge Cabell's Order wisely allows the parties to first review the Server materials and to see if the constitutional issue is in fact real, thus narrowing the potential weighing of constitutional rights to a defense against any privilege concerns of a client to only a document in which there is a valid constitutional claim.

that "the nature and content of the privileged evidence must be weighed against the purposes served by the attorney-client privilege to determine whether any of the documents are of such value as to require [defendant]'s rights under the attorney-client privilege to yield to the individual Defendants' Sixth Amendment right to present evidence." 439 F. Supp. 2d 1125, 1142 (D. Mont. 2006). In *W.R. Grace*, the Court authorized, as Magistrate Judge Cabell has here, a document-by-document assessment of the Attorney-client privilege. *See Id.* at 1148-49; *see also United States v. Carollo*, Docket No. 10-00654 (S.D.N.Y. Nov. 14, 2011), Dkt. 77 at 6 ("The Government seriously doubts that the Privilege-Claimant is suggesting that the Government can withhold Brady information because that information is in an otherwise privileged document."). Unlike, *SEC v. Present*, Docket No. 14-cv-14692, Dkt. 59, (D. Mass. 2015) (Sorokin, D.J.), where the materials were sought from the corporation that had not waived the privilege, here the materials are in the Government's possession, custody, and control.

As such, Magistrate Judge Cabell's Order is not in violation of any Supreme Court precedent and is more than adequate to protect against any potential waiver of the attorney-client privilege or other confidences.

3. **BEHMAN'S AGREEMENT DOES NOT APPLY TO THE CURRENT CRIMINAL PROCEEDING AND IF IT WERE TO APPLY WOULD STAND IN STARK CONFLICT WITH THE IMPERATIVES OF CRIMINAL DISCOVERY.**

The agreement, despite Behman and BH's claims to the contrary, by its terms applies only to the pre-indictment, grand jury stage of the investigation, not the current "subsequent criminal proceeding," *see supra*. Magistrate Judge Cabell has specifically determined that Behman's agreement with the Government does not prohibit the Government from accessing and performing searches on the Server data. Dkt. 74 at 3. Thus, the defendants are entitled to the same level of access the Government possesses and to perform the same forensic review.

Assuming *arguendo* that the agreement does apply to the "subsequent criminal proceeding", then the Government would have impermissible vested Behman, BH, and their counsel Mr. Lovett, adversarial third-parties, with the duties of a prosecutor. *See Kyles v. Whitley*, 514 U.S. 419, 437 ("[P]rosecutor has a duty to learn of any favorable evidence…"). The agreement calls upon Mr. Lovett alone to determine privilege and "pertinence", without any oversight from the Government. Given that Mr. Lovett and his clients are deeply biased against the defendants as evidence by Mr. Lovett's current filing, *see* Dkt. 79 at 2, and the potential monetary incentive if defendants are convicted, Mr. Lovett cannot be allowed to control the scope of discovery and to diminish or eviscerate the constitutional and statutory rights of the defendants. The Government wisely, however, did not apply the pre-indictment protocol that it had agreed to with Behman and BH in a post-indictment setting where the constitutional and codified rights of a criminal defendant need to be considered and prioritized and, respectfully, neither should the Court.

Private agreements cannot be allowed to trump F. R. Crim. P. 16, Local Rule 116, or the obligations of *Brady v. Maryland*, 373 U.S. 83 (1963), and are unenforceable when a criminal defendant's rights are thereby diminished. *See In re Pacific Pictures Corporation*, 679 F.3d 1121 (9th Cir. 2012); *see also U.S. v Massachusetts Institute of Technology,* 129 F.3d 681, 686 (1st Cir. 1997) ("Anyone who chooses to disclose a privileged document to a third party, or does so pursuant to a prior agreement or understanding, has an incentive to do so, whether for gain or to avoid disadvantage."); *United States v. Williams Companies, Inc.*, 562 F.3d 387, 395-96 (D.C. Cir. 2009) (Assurances of confidentiality that power company, which had produced documents to the Government during investigation of alleged improper trading practices, had secured were neither sufficiently strong nor sufficiently qualified to warrant application of work

product doctrine to prevent Government's disclosure of documents material to the preparation of a criminal defense by company's employee).

4. **THE MATERIALS ON THE SERVER ARE HIGHLY RELEVANT AND MATERIAL TO THE CASE.**

Access to the Server and to the client files on the Server is essential and the materials therein are highly relevant and material to the case. Files on the Server will show that despite being 2/3 owner of G&B, Mr. Gibson originated far more than 2/3 of the cases, was responsible for more than 2/3 of the proceeds of the firm, and was thus justified, in the give and take of a small two-man firm, to receive more than 2/3 of the firm's proceeds. Access to the Server is necessary to prove Mr. Gibson's origination of cases, his work on cases, his expenditures, his cash advances to the firm and the subsequent repayment of those advances, the reasons for specific expenditures, and his reliance on firm credit cards to promote the firm at social and professional functions. Proving that Mr. Gibson did not embezzle, as alleged by Behman, and to prove his good faith in his management of the firm finances are also highly relevant to his credibility if he were to testify (the Government has not agreed that impeachment by use of evidence of his intra-firm financial decisions, his alleged use of law firm fees for personal expenditures, and his receipt of over 2/3 of the proceeds of the firm at various times would not be used in cross-examination).

Accessing Mr. Gibson's written statements, as required by F. R. Crim. P. 16(a)(1)(B) (a discovery rule that does not even require a showing of materiality), which reside all over the Server and which have not been disclosed in the narrow partial prior production of Mr. Gibson's inbox (*i.e.* emails he received, but not necessarily emails he sent to any of the others at the firm, or memoranda he authored, or memorialization of conversations he participated in) is pivotal to preparing his defense. Accessing the written statements of Mr. Behman (only a small subset of

11

his emails have been produced), which are also predictably on the Server will be equally necessary to a full illumination of the financial practices of the firm. Accessing client files is necessary to demonstrate that Gibson originated much of the firm's business, worked on many of the cases, advanced funds to meet the necessities of client work, met clients in his travels that were properly paid for by the firm, and conducted himself as a skilled attorney not, in Behman's world, as an embezzler "who victimized his former law firm, Gibson Behman, P.C. ("GB") and former law partner, Behman." Dkt. 79 at 2. As to the other Rule 16 production obligations, the Government, not Behman, is allocated with determining materiality. It is the norm in "white collar cases" for the Government to turnover vast electronic databases containing the books and records they have received through their investigation to an indicted defendant for the defendant's review. This case should proceed no differently given the broad protections imposed by the Protective Order, Dkt 75.

5. **BEHMAN AND BH'S PROPOSED USE OF A TAINT TEAM IS NOT A FEASIBLE SOLUTION.**

Behman and BH's proposed use of a taint team to review the Server is impractical considering that the review may halt this case for an unpredictable amount of time. In counsel's experience, *see e.g. United States v. Abbell*, 963 F. Supp. 1178 (S.D. Fla. 1997), the use of a taint team to review seized legal files from a law firm delayed trial and the discovery process for years. But, importantly, it provided a vehicle for addressing materials, where the materials were seized from the law firm and not voluntarily turned over by the law firm *i.e.* where there had been no selective waiver or prior abandonment of the confidential nature of the materials at issue. At this point, this discovery dispute has already taken almost four months. Defendants should not be forced to sit and wait for the conclusion of a potentially multi-year privilege review while having criminal charges pending against them.

Magistrate Judge Cabell's practical Order allows the parties to review the evidence quickly and efficiently while protecting any attorney-client privileged materials – which have already been provided to a new law firm, then (in part) to adversarial civil litigants, and then to the Government - from further disclosure to the public.

### III. CONCLUSION

Based on the foregoing, Magistrate Judge Cabell's Order is not "contrary to law", nor "clearly erroneous," and should be issued unmodified.

| | |
|---|---|
| Respectfully Submitted, | Respectfully Submitted, |
| Mark Kesner<br>By his Attorney, | Daniel P. Gibson<br>By his Attorney, |
| **/s/ Joshua L. Solomon**<br>Joshua L. Solomon | **/s/ Martin G. Weinberg**<br>Martin G. Weinberg<br>Mass. Bar No. 519480<br>20 Park Plaza, Suite 1000<br>Boston, MA 02116<br>(617) 227-3700<br>owlmgw@att.net |

Dated: June 22, 2016

### CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, June 22, 2016, a copy of the foregoing documents has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg