UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA,
    Plaintiff

vs.                                    Case No. 1:15-cr-10323-IT

DANIEL GIBSON et al,
    Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF FIRST INTERIM STATUS CONFERENCE
BEFORE THE HONORABLE DONALD L. CABELL
AT BOSTON, MASSACHUSETTS
ON FEBRUARY 4, 2016

APPEARANCES:

<u>For the Government:</u>
Stephen P. Heymann, Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
617-748-3100

<u>For Daniel Gibson:</u>
Martin G. Weinberg, Esquire
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
617-227-3700

Transcriber:  Karen M. Aveyard,
            Approved Federal Court Transcriber

----------------------------------------------------------

**TRANSCRIPTION PLUS**
**1334 ELM STREET**
**LEOMINSTER, MASSACHUSETTS 01453**
**(978) 466-9383**
**www.transcriptionplus.com**

APPEARANCES (continued):

For Mark Kesner:
Joshua L. Solomon, Esquire
Pollack Solomon Duffy, LLP
133 Federal Street, Suite 902
Boston, Massachusetts 02110
617-439-9800

For Scott Behman:
William J. Lovett, Esquire
Collora, LLP
100 High Street, 20th Floor
Boston, Massachusetts 02110
617-371-1000

|   |   |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 |   |
| 3 | THE CLERK:  -- Daniel Gibson and Mark Kesner, Criminal |
| 4 | Action No. 15-10323, will now be heard before this Court. |
| 5 | Could counsel please identify themselves for the |
| 6 | record. |
| 7 | MR. HEYMANN:  Your Honor, Steve Heymann on behalf of |
| 8 | the Government. |
| 9 | THE COURT:  Good morning. |
| 10 | MR. SOLOMON:  Good morning, your Honor.  Joshua |
| 11 | Solomon on behalf of Mark Kesner. |
| 12 | THE COURT:  Good morning. |
| 13 | MR. WEINBERG:  Good morning, your Honor.  Martin |
| 14 | Weinberg on behalf of Daniel Gibson. |
| 15 | THE COURT:  And good morning to you.  Just give me one |
| 16 | moment to get my stuff here. |
| 17 | But as I am -- if somebody can juts bring me up to |
| 18 | speed on the discovery, the computer server issue, I'm not sure |
| 19 | I quite understood that, and in particular is there an issue |
| 20 | there right now or was that more just kind of for my |
| 21 | information in terms of what's going on. |
| 22 | MR. HEYMANN:  If I may start, I think there is |
| 23 | (inaudible) right now. |
| 24 | THE COURT:  There is? |
| 25 | MR. HEYMANN:  Yes.  (Inaudible) if I may lay it out in |

1   this way, during the course of the investigation we obtained
2   certain records from a computer server that was for the law
3   firm that Mr. Gibson was at at the time.  It's a server that
4   continued to be used by a successor law firm.  We obtained
5   those records pursuant to a nondisclosure agreement, copies of
6   which the parties have, that was intended to deal with
7   privilege.
8             THE COURT:  Okay.  So it wasn't by subpoena?
9             MR. HEYMANN:  What I don't recall, I don't believe we
10  obtained a subpoena.  I did not have an opportunity, I should
11  have, to review the subpoena law before coming here.  We
12  certainly, unless Mr. Lovett, who (inaudible), we certainly
13  obtained the records pursuant to a subpoena.  But whether we
14  obtained the object known as the server is a separate question.
15            (Inaudible) the server to -- so that if necessary we
16  can authenticate certain records at trial, but we get a
17  privilege review and a certain production of documents pursuant
18  to the privilege.
19            The issue is this, the Government has no objection
20  whatsoever to access by the defense counsel to anything that
21  will facilitate their preparation of the defense so long as the
22  Government gets access to the same body of records.  We don't
23  want to know that they've gotten Record 1, 5 and 11, we just
24  want access to Records 1 through 500 because they have access
25  to that, Records 1 through 500.

1      There is a problem of privilege that needs to be
2 addressed and the defense has sought the entire server from the
3 Government, and we don't believe that we can produce the entire
4 server because of the privilege agreement with the prior law
5 firm.
6      THE COURT: Right.
7      MR. HEYMANN: So in whatever way that that can be sort
8 of resolved, and counsel is here from the -- who represents the
9 prior law firm, we have no objection (inaudible) how to get
10 through this privilege review issue in a way that gets the
11 records to the defense that they need for preparation,
12 preserves the privilege, is not overly burdensome and is
13 reasonably quick.
14      So that's why we're -- that's the issue that's
15 floating around.
16      THE COURT: All right. So when I was thinking about
17 this, I mean, I just had kind of two visceral thoughts or
18 responses. One was a question, which is, is it proper to think
19 about this as an issue of whether the privileged information on
20 the server, over that information that it was kind of
21 understood the Government wouldn't be disclosing as a result of
22 this agreement, if that's what I understand you to be saying,
23 that you got the server, but there was an understanding some of
24 the stuff that's on there you wouldn't be using it, looking at
25 it, it wouldn't be disclosed to anybody else.

1       MR. HEYMANN:  The understanding was that -- I should
2  take a step back.  We have produced absolutely everything that
3  we have had access to.
4       THE COURT:  Right, but there's some stuff on there you
5  don't have access to.
6       MR. HEYMANN:  (Inaudible) which we don't have access
7  to either because, you know, it was considered it might be
8  privileged --
9       THE COURT:  Right.
10       MR. HEYMANN:  -- or it has not been reviewed for
11  privilege.  More of those things.
12       THE COURT:  And so I don't know whether it's proper to
13  think about it in terms of well, is the Government saying that
14  is information that is not in their custody, possession or
15  control, so that we -- it's not even really right to think
16  about whether we should have to turn this over.  That's not
17  something -- I mean, if things could have been worked out that
18  we got just the information we should have gotten, that would
19  have been ideal.  We have this because there might be a need to
20  authenticate stuff, and so this is not really reviewed as
21  something we can play with on our own.  So that's one thought I
22  had.
23       The other was I know in the civil context, you would
24  just invite the nonparty to come in and assert their interests
25  in the context of the ongoing action and work it out that way.

1   And I see Mr. Lovett is here.  We can do that, but -- well, let
2   me hear -- I don't know, Mr. Weinberg and Mr. Solomon, if
3   you've thought about what you --
4           MR. HEYMANN:  (Inaudible.)
5           THE COURT:  Yeah.
6           MR. HEYMANN:  (Inaudible) it's not presently in the
7   Government's possession/control for the purpose of this motion.
8           THE COURT:  Right.
9           MR. HEYMANN:  The purpose of inviting Mr. Lovett here
10  was so that there could be some resolution that enabled the
11  Government to produce it or enabled the defense counsel to get
12  direct access of it from his copy, from Mr. Lovett's copy of
13  the server --
14          THE COURT:  Right.
15          MR. HEYMANN:  -- and in such a form it protected the
16  privilege, was not overly burdensome, I just gave equal copies
17  to everybody.
18          MR. WEINBERG:  Your Honor, (inaudible).
19          THE COURT:  Well, and I should note by saying I'm not
20  sure I'm going to be comfortable saying here's exactly what
21  we're going to do.  I just wanted to understand what the issue
22  was.
23          MR. WEINBERG:  (Inaudible) set with this from the
24  defendants' position is that this server must be produced.  It
25  must be produced with either (inaudible) or be a limit that

1    Mr. Lovett could do a privilege log and it could be subject to
2    a hearing.
3            THE COURT: How can the Government do that though
4    without violating the agreement they reached to get it in the
5    first place?
6            MR. WEINBERG: Well, the Government's agreement is a
7    little vague. The agreement is that Mr. Lovett would review
8    the privilege, but the agreement also is that they would say
9    what they thought was pertinent and relevant to them; turn it
10   over to Mr. Lovett, who then would do a second level of
11   pertinence or relevance review. But the predicate is that the
12   server is in the custody and control of the Government.
13   Whether or not the Government can unilaterally enter an
14   agreement that diminishes Mr. Gibson's Rule 16 rights and his
15   constitutional rights is a subject for your Honor's review.
16   What's not at issue is that (inaudible) the server.
17           What's also not an issue is that on the server are
18   Mr. Gibson's written statements, these e-mails for Mr. Gibson,
19   whether it be typed by others and sent in Mr. Gibson's name to
20   a number of third parties, a number of clients that are in the
21   possession of the Government. There's no question that the
22   Government intends to do forensic examinations on the server.
23   They've told us in automatic discovery. We intend to have some
24   stipulations to have a forensic exam so we can prove not only
25   authenticity, but prove where certain e-mails came from. I

1   can't conduct an independent analysis or the kind of forensic
2   analysis without access to the server.
3          The server belonged to the Gibson & Behman law firm.
4   Mr. Gibson is a two-thirds shareholder. He's the principal
5   owner of that law firm. And even though he was disbarred from
6   the bar, that he's still a shareholder. It belongs to him as
7   well as Mr. Lovett's client. Mr. Lovett's client and
8   Mr. Lovett, to some extent, are adversaries. Mr. Behman went,
9   in 2011, with Mr. Lovett, went to the IRS (inaudible) an
10  applicant for a whistleblower reward. The discovery from
11  Mr. Heymann is saturated with evidence that Mr. Lovett is
12  offering to corroborate with the Government. He wants to
13  produce an accountant's analysis of Mr. Gibson's alleged tax
14  violations. He's talking about -- Mr. Lovett is (inaudible)
15  the Government discovery (inaudible) where I'm thinking of
16  calling Paul Levinson (inaudible).
17         So I can't just entrust relevance to Mr. Lovett, who
18  has represented Mr. Gibson's adversary in a brutal internal
19  divorce in this law firm that had major litigation, mediation,
20  arbitration. Mr. Lovett properly represents Mr. Behman, but
21  the Government discovery that I can represent to your Honor and
22  provide to your Honor, his exhibits, if your Honor needs it,
23  shows (inaudible) to be Mr. Gibson's adversary, shows him to be
24  attempting to cooperate with and help the IRS make a criminal
25  case and maybe (inaudible) criminal case against Mr. Gibson.

1          THE COURT:  But if the Government didn't have this
2     server, then you'd be on your own trying to get this maybe
3     through a Rule 17 subpoena, and Mr. Lovett would then have the
4     opportunity to come to court and you would have to kind of hash
5     all of this out there.
6          So it would seem that no matter what, at some point
7     they get a chance to say no, we don't think Mr. Gibson should
8     have access to this information.
9          I think that -- because I don't really want this to
10    derail the regular status conference, I think we need to reduce
11    this to a motion, because I think there's just -- I do think
12    there's a structural issue, is this in the Government's
13    possession, custody or control for purposes of this whole
14    issue, because that obviously is going to have some
15    ramifications.  I'm not sure it's going to be dispositive, but
16    I think I need more about what the understanding was when it
17    was given to the Government, that disclosure agreement and the
18    like.
19         I also want to make sure that as part of this, if it's
20    appropriate for the firm to have a voice in this, that they get
21    the chance to understand what's being asked for, for what
22    purpose, and they can weigh in as appropriate.  It seems to me
23    that's not going to slow things down because I do see that
24    you're asking for 60 days to an interim status conference, and
25    I'd like to think that we can thus get this one crystalized and

1   deal with it between now and then so it doesn't actually affect
2   anything.
3             But I don't feel comfortable just kind of listening to
4   this and saying here's how I think we should resolve that.
5             MR. WEINBERG:  No, I think this is a complicated
6   issue.
7             THE COURT:  Yeah.
8             MR. WEINBERG:  I think it stops with Rule 16.  I don't
9   object to Mr. Lovett having (inaudible) a Rule 16 motion --
10            THE COURT:  Well, I think in the first instance, I
11  think it's got to begin with the defendants filing a Motion to
12  Compel, and that will start the process and help us to figure
13  out who should be able to -- and I assume you're going to begin
14  by asking the Government to turn it over as opposed to the
15  firm.
16            MR. WEINBERG:  Well, actually I don't see this as a
17  Rule 17 issue (inaudible) Government sitting with the computer
18  subject to an agreement that, you know, your Honor can read the
19  agreement (inaudible) whether it in any way impacts on
20  Mr. Gibson's constitutional Rule 16, Local Rule 116 rights.
21  That's not to say that an intervening party can't assert
22  privilege, but it's got to be done through privilege logs on a
23  particularized basis.  It can't be to reverse where I have the
24  burden to show that what I want is not privileged.  I have the
25  Rule 16 constitutional rights.  In fact, my client is charged

1  in a criminal case where the Government has his server and
2  intends to access the server, and has unilaterally limited
3  their access not by law, but by their own judgments on
4  relevance.
5       THE COURT:  Well, I mean, again, I don't want to get
6  into this today.  I'm not sure if it's a unilateral rule.  I
7  would presume somebody would say it was only give -- it was
8  given to us with an understanding that our use was going to be
9  limited, and had we not agreed to some restriction on our use,
10 it never would have been offered to us voluntarily.
11      MR. WEINBERG:  Well, I think there's two different
12 channels.  One is the privilege issue, and Mr. Gibson would
13 sign a protective order so your Honor knows that would put
14 him -- subject him to an order not to disseminate any part of
15 the server that he received under Rule 16.  He's not looking to
16 breach an agreement that he entered into with Mr. Lovett's
17 client that nobody would disclose confidential materials.
18      But there's also a relevance issue and the
19 Government -- if I could hand to your Honor an index to the
20 server (inaudible) provided by the Government, and your Honor
21 can see two different (inaudible) of where the Government has
22 access from the server and what they've provided to me.  The
23 first is the horizontally yellow lines on what (inaudible) he
24 asked the IRS to download.  Much of it is not downloaded.  And
25 you also see pluses next to a lot of the line items which at

1    least in my rather primitive computer knowledge is when you
2    press a plus, subdirectories come out.
3           So we don't even have a complete index of really
4    what's on the server.  Sometimes there's a minus (inaudible)
5    you have the subdirectories and other times there's a plus and
6    the plus will stay.  I understood that all the subfolders would
7    come out and we'd have a better directory.
8           The second issue is when the Government selects the
9    horizontal line items, they then give the disk to Mr. Behman's
10   lawyer, who assigns not only whether there's privileged
11   materials there, but whether there's relevant or pertinent
12   materials there.  I can't entrust Mr. Gibson's (inaudible) to
13   Mr. Lovett and Mr. Behman (inaudible) whistleblower rewards
14   which would be furthered if Mr. Gibson is convicted and there's
15   restitution, there was civil (inaudible) chance to litigate
16   (inaudible) liability.
17          And so I would ask the Court for, say, two weeks to
18   file the initial Rule 16 motion and would be prepared to file a
19   reply with Mr. Heymann's response to it.
20          THE COURT:  Okay.  And that's reasonable.
21          MR. SOLOMON:  Your Honor, if I may, Mr. Weinberg
22   hasn't talked about the schedule before that.  If we could ask
23   for three only because (inaudible) vacation week is in between
24   and I'll be gone for a week of those two weeks (inaudible).
25          THE COURT:  Okay.  That's fine.

1      MR. HEYMANN:  Your Honor?
2      THE COURT:  Yes.
3      MR. HEYMANN:  Just two things.  One, I would suggest,
4  it doesn't (inaudible) impact our response at all, but in an
5  effort to speed things up, if they could attach to their motion
6  a proposed protective order, then we won't have a two-step
7  (inaudible).
8      THE COURT:  I think that's very reasonable.  All
9  right.
10     MR. HEYMANN:  And then just in terms of the factual
11 recitation, it was (inaudible) who chose the various columns,
12 not me.  I wasn't (inaudible) personally involved in that.  But
13 also, (inaudible) my understanding was it was not a
14 (inaudible), rather a review for whether or not there was
15 privilege.  But that is not to say that we got things that were
16 other than those yellow highlighted ones, but, rather, that
17 there wasn't this two-step production.
18     THE COURT:  Right.
19     MR. HEYMANN:  But --
20     MR. WEINBERG:  And I would ask (inaudible) this letter
21 seems to indicate that there's a subpoena and we (inaudible) in
22 some ways guided Mr. Behmann's counsel's decision on whether or
23 not to download the server (inaudible).  So I'm going to ask
24 for a copy (inaudible).
25     THE COURT:  Well, to the extent you guys are already

1   talking about can we have a copy of this, can we have a copy of
2   that, it would be ideal for us if you worked something like
3   that out in the context of that relationship.  But in the same
4   way that I view this as an issue now, because the Government,
5   as I understand it, is not willing to turn over the server in
6   the way that you want it, it's appropriate to address that
7   through a Motion to Compel.  If the Government is not willing
8   to turn over a copy or provide you with a copy of the subpoena.
9   Then you can request that also via the Motion to Compel.
10          Okay?
11          All right.  But otherwise, it seems to me -- I mean,
12  the epiphany I had when I was reviewing this is okay, we should
13  be treating this as a complex case, and I don't think I was
14  before, but I think I appreciate that now.  So I do think it's
15  reasonable, the request that you have, to come back 60 days for
16  an interim status, and fingers crossed this issue will not be
17  an issue and we will be able to move beyond that.
18          And then Mr. Lovett, I guess, when we see the
19  submissions, then we can figure out how to incorporate you into
20  this whole process.  So for now I don't -- I'm not sure there's
21  anything for you to do.
22          MR. LOVETT:  Well, your Honor, I think I need to be
23  heard.
24          THE COURT:  Well, I'm not making any orders today.  I
25  don't have anything before me.  I'm not prepared to treat this

1   as an issue that's appropriate for the Court to even weigh
2   into.  I need to see a motion first.
3           So if there's something you want to say, that's fine,
4   but right now there's nothing before me.  So --
5           MR. LOVETT:  No, I don't need to be heard today.
6           THE COURT:  Oh, yeah.  No no.
7           MR. LOVETT:  I was going to say --
8           THE COURT:  We're on the same page.  I'm saying we'll
9   make sure if you should be heard, you're going to be heard in
10  this.  I just want to get this before us so we can figure out
11  the best way to bring you in.
12          MR. LOVETT:  Yes.  I just ask that I reserve my right
13  to submit a pleading in response to the Motion to Compel.
14          THE COURT:  I hope that's what I was signaling, but
15  yes.
16          MR. LOVETT:  Thank you.
17          THE COURT:  So we'll make that very clear.
18          MR. LOVETT:  Thank you.
19          THE COURT:  Okay.  We're going to talk about a
20  protective order.
21          Do we need to deal with the timing on expert witness
22  disclosures today?  Do you want to deal with that at the
23  next --
24          MR. HEYMANN:  (Inaudible) that next time.
25          THE COURT:  All right.  So otherwise then I'll look

```
 1   for -- we'll look for a motion in three weeks.
 2               That's the understanding?
 3               MR. WEINBERG:  Yes, your Honor.
 4               THE CLERK:  (Inaudible.)
 5               THE COURT:  Yes, why don't --
 6               THE CLERK:  Okay.  How about Wednesday, April 6th, at
 7   10:30?
 8               THE COURT:  Is that fine for everybody?
 9               MR. SOLOMON:  (Inaudible) your Honor.
10               MR. WEINBERG:  (Inaudible.)
11               THE COURT:  And I assume there's no objection to our
12   excluding the time from today to the next status conference?
13               MR. WEINBERG:  No objection, and to the extent your
14   Honor wants to deem this a complex case (inaudible).
15               THE COURT:  Okay.  Mr. Heymann, are you okay with that
16   too?
17               MR. HEYMANN:  I am okay, your Honor.
18               THE COURT:  All right.  So we will designate this then
19   as a complex case.
20               MR. HEYMANN:  And I'm sorry, (inaudible)?
21               THE CLERK:  10:30 in the morning.
22               MR. HEYMANN:  10:30?
23               THE CLERK:  10:30.
24               THE COURT:  All right.  Is there anything else we need
25   to address today?
```

1           All right.  Thank you.
2           MR. LOVETT:  Thank you.
3           THE COURT:  We'll be in recess.
4
5           (The hearing was concluded.)

C E R T I F I C A T I O N

I, Karen M. Aveyard, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript, consisting of 18 pages, is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.

/s/ Karen M. Aveyard

Karen M. Aveyard

June 26, 2016

Date