UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:15-cr-10323-IT-1 |
| DANIEL GIBSON, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

August 1, 2017

TALWANI, D.J.

Before the court is Defendant Daniel Gibson's Motion to Dismiss[,] or in the Alternative[,] to Limit Count Five [#159] of the Indictment [#1], which charges that Gibson and Mark Kesner conspired to engage in a tax-fraud scheme. [1] Gibson argues that Count 5 impermissibly groups separate alleged unlawful acts relating to the 2005, 2006, 2008, and 2010 tax years, into a single multi-year scheme for the purpose of circumventing the statute of limitations. For the reasons set forth below, the motion is DENIED.

I.  Standard

"[I]n the ordinary course of events, a technically sufficient indictment handed down by a duly empaneled grand jury 'is enough to call for trial of the charge on the merits.'" United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011) (quoting Costello v. United States, 350 U.S. 359, 363 (1956)). However, pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure, "[a] party may raise by pretrial motion any defense . . . that the court can determine without a trial on

---

[1] Gibson filed the instant motion jointly with Defendant Mark Kesner. Kesner has since passed away, and the Government has dismissed all counts against him. Dismissal of Mark Kesner from Indictment [#190]. Accordingly, the court treats this motion as filed by Gibson alone.

1

the merits." The court must cautiously exercise its authority to dismiss because dismissing an indictment "directly encroaches upon the fundamental role of the grand jury." Whitehouse v. U.S. Dist. Court, 53 F.3d 1349, 1360 (1st Cir. 1995).

"When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true, mindful that the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (internal quotation marks omitted). "At the indictment stage, the government need not 'show,' but merely must allege, the required elements." United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014).

II. Background

Count 5 of the Indictment charges that, from June 2006 to October 2010, Gibson and Mark Kesner engaged in a conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Indictment ¶¶ 15-16 [#1]. According to the Indictment,

> the purpose of the conspiracy was to impede, impair, obstruct and defeat the lawful government functions of the Internal Revenue Service . . . in the ascertainment, computation, assessment, and collection of income taxes, and thereby to permit [Gibson] to retain more of his income through the underpayment of taxes he owed.

Id. ¶ 8. The Indictment alleges that Gibson (the president and managing director of a law firm) retained Kesner (a certified public accountant) to perform accounting services for the law firm and for Gibson individually. Id. ¶¶ 1, 2. As alleged, for the tax years 2005, 2006, 2008, and 2009, tax returns prepared by Kesner and filed by Gibson intentionally underreported the law firm's income by more than $3.7 million, enabling Gibson to underreport his personal income by more than $2.4 million. Id. ¶ 7.

2

According to the Indictment, "[i]n every year except one between 2005 and 2009," Kesner allegedly directed his staff to alter electronic accounting records so that he and Gibson could underreport Gibson's personal tax obligations. Id. ¶ 9. The Indictment alleges the following six overt acts in furtherance of this conspiracy. Id. ¶ 10. First, in June 2006, Kesner met with his staff to review the electronic accounting records for the 2005 tax year, prompting staff to alter the amount of professional fees reported by Gibson's law firm. Id. ¶ 10(a). Second, in September 2007, at Gibson's request, Kesner directed his staff to alter the professional fees reported for the 2006 tax year. Id. ¶ 10(b). Third, in July 2009, following a meeting with Gibson about the 2008 tax year, Kesner directed his staff to lower the amount of professional fees reported by the law firm. Id. ¶ 10(c). Fourth, in November 2009, Gibson filed an individual income tax return which underreported his income. Id. ¶ 10(d). Fifth, in September 2010, Gibson falsely reported to Kesner in an email the amount of funds he loaned his law firm. Id. ¶ 10(e). Despite knowing Gibson's statement to be false, Kesner directed his staff to alter the amount of professional fees reported by the law firm. Id. Sixth, in October 2010, Gibson filed an individual income tax return that underreported his income. Id. ¶ 10(f).

III. Discussion

Count 5 of the Indictment charges Gibson with violation of 18 U.S.C. § 371, which imposes criminal penalties "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy."

As grounds for his Motion to Dismiss, Gibson argues that Count 5 is insufficient under the applicable six-year statute of limitations, see 26 U.S.C. § 6531(8), because the overt acts

3

alleged with respect to the 2005 and 2006 tax years (which would be time barred if charged as stand-alone substantive acts) do not comprise part of a single conspiracy with the overt acts alleged with respect to the 2008 and 2009 tax years. Because no act in furtherance of the conspiracy is alleged to have occurred with respect to the 2007 tax year, Gibson argues that, if taken as true, the Indictment supports either two conspiracies (with the first conspiracy encompassing the 2005 to 2006 tax years, and the second including the 2008 and 2009 tax years) or four conspiracies (a separate and distinct conspiracy for each tax year charged), but not a single conspiracy.

The scope of the conspiratorial agreement is critical to whether the statute of limitations has run, because the scope is what "determines both the duration of the conspiracy, and whether the act relied on as an overt act may be properly regarded as in furtherance of the conspiracy." Stewart, 744 F.3d at 21 (quoting Grunewald v. United States, 353 U.S. 391, 397 (1957)). However, "at the motion-to-dismiss stage, the allegations are taken as true, leaving for the jury the questions of the actual scope of the conspiratorial agreement, whether the acts alleged actually occurred, and, if so, whether they furthered the conspiracy's objectives." Id. at 22. Stewart illuminates this point. In that case, the defendant argued that the indictment was time barred because the only overt act that fell within the statute-of-limitations period—signing a United States Citizenship and Immigration Service petition to remove conditions on her co-conspirator's Lawful Permanent Resident status—occurred after the completion of the conspiracy. Id. The United States Court of Appeals for the First Circuit concluded that the question of whether the conspiratorial agreement included the removal of the conditions was not fit for resolution on a motion to dismiss. Id.

4

"A single agreement to commit several crimes constitutes one conspiracy," and "multiple agreements to commit separate crimes constitute multiple conspiracies." United States v. Broce, 488 U.S. 563, 570-71 (1989). Here, the government has alleged a single ongoing conspiracy to file fraudulent income taxes, with six overt acts of which three allegedly occurred within the six-year limitations period. Taking the Indictment as true, as the court is required to do on a motion to dismiss, the facts alleged indicate that Gibson and Kesner shared a common goal to underreport Gibson's income for his financial gain for the multiple-year span and that Gibson and Kesner knowingly altered financial records and underreported the law firm's and Gibson's income for the purpose of achieving this goal.

Whether the evidence may ultimately supports the alleged single agreement is a question for trial, and may be challenged in a motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure at the close of evidence or the close of the government's evidence. The court may then examine the totality of the evidence in assessing whether it supports the existence of a single conspiracy. United States v. Mangual-Santiago, 562 F.3d 411, 421 (1st Cir. 2009). In that context, the court can probe as to whether the evidence demonstrates the "existence of a common goal," whether "the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme," and whether "[e]ach individual . . . think[s] the aspects of the venture interdependent," focusing on "each defendant's state of mind, and not his mere participation in some branch of the venture." Id. at 421-22 (quoting United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999)). If the evidence is adequate to permit a reasonable trier of fact to find a single conspiracy beyond a reasonable doubt, it is the jury's finding that will resolve the issue. Id. at 421 (citing United States v. Boylan, 898 F.2d 230, 243 (1st Cir. 1990)).

IV.     Conclusion

Accordingly, Gibson's Motion to Dismiss[,] or in the Alternative[,] to Limit Count Five [#159] is DENIED without prejudice to renewing the argument in a Rule 29 motion at the close of evidence.

IT IS SO ORDERED.

Date: August 1, 2017                                             /s/ Indira Talwani
                                                                 United States District Judge